IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEITH and KEREN BYRNE, <br><br> Plaintiffs, <br><br> v. <br><br> RAND BEERS, et al., <br><br> Defendants. | CIVIL ACTION <br> NO. 13-6953 |

**OPINION**

**Slomsky, J.**                                                                                      June 17, 2014

## I.     INTRODUCTION

On November 29, 2013, Keith and Keren Byrne ("Plaintiffs") filed a Complaint, seeking a declaratory judgment invalidating the denial of Mr. Byrne's application for permanent residency by U.S. Citizenship and Immigration Services ("USCIS"). Plaintiffs also challenge the denial of Mr. Byrne's application for a waiver of inadmissibility and his application for temporary employment authorization.[1]

On February 18, 2014, USCIS filed a Motion to Dismiss, or a Motion for Summary Judgment in the alternative, seeking dismissal of the Complaint. On March 7, 2014, Plaintiffs filed a Cross-Motion for Summary Judgment in opposition.[2]

---

[1] Plaintiffs named the following individuals as defendants: Rand Beers, Acting Secretary of the Department of Homeland Security; Alejandro Mayorkas, Director of USCIS; Evangeline Klapakis, Field Office Director of USCIS in Philadelphia; Tony Bryson, District Director of USCIS in Philadelphia; and Robert Cowan, Director of the USCIS National Benefits Center (collectively "USCIS" or "Defendants").

[2] In rendering its Opinion, the Court has considered the following: the Complaint (Doc. No. 1), Defendants' Motion to Dismiss or Motion for Summary Judgment in the Alternative (Doc. No. 6), Plaintiffs' Response in Opposition and Cross-Motion for Summary Judgment (Doc. No. 7), Defendants' Reply in Further Support of their Motion (Doc. No. 9), all related filings

## II.     BACKGROUND

Mr. Byrne is a native of Ireland. (Doc. No. 1 at ¶ 18.) On January 2, 2008, Mr. Byrne entered the United States under the Visa Waiver Program ("VWP").[3] (Id.) He has remained in the United States ever since his entry. On October 10, 2010, Mr. Byrne married Mrs. Byrne, who is a United States citizen. (Id. at ¶ 2.) On August 4, 2012, the Byrnes had a daughter, Leona. (Id.) They are now raising Leona and Ezra, Mrs. Byrne's son from a previous relationship. (Id.)

On July 9, 2012, Mrs. Byrne filed an I-130 Petition for Alien Relative ("I-130") on Mr. Byrne's behalf. (Id.) Simultaneously, Mr. Byrne filed an I-485 Application to Register Permanent Residence or Adjust Status ("I-485") and an I-765 Application for Employment Authorization ("I-765"). (Id. at ¶ 18.) He also submitted an I-601 Application for Waiver of Grounds of Inadmissibility ("I-601"), in the event that USCIS considered him to be inadmissible for permanent residency in the United States.[4] (Id. at ¶ 20.)

On September 11, 2012, USCIS granted Mr. Byrne temporary employment authorization while his residency application was pending. (Id. at ¶ 19.) On October 24, 2012, USCIS interviewed Mr. and Mrs. Byrne regarding their I-130 and I-485 applications. (Id. at ¶ 21.) Two days later, on October 26, 2012, USCIS approved Mrs. Byrne's I-130 petition. (Id. at ¶ 23.) On

---

and exhibits, and the arguments made by counsel for the parties at a hearing on the Motions held on March 20, 2014.

[3] The VWP permits citizens of participating countries to travel to the United States without a visa for a maximum of ninety days. 8 U.S.C. § 1187(a).

[4] An alien must be admissible to the United States in order to be eligible to have his status adjusted to permanent resident. Admissible means that none of the grounds of inadmissibility set forth in 8 U.S.C. § 1182 apply to the alien. If an adjustment of status applicant is determined to be inadmissible, USCIS may waive the finding of inadmissibility in certain circumstances. This is known as a waiver of inadmissibility.

July 25, 2013, Mr. Byrne applied to renew his temporary employment authorization.  (Id. at ¶ 25.)

On August 20, 2013, USCIS denied Mr. Byrne's I-485 application for permanent residency and his I-601 waiver application.  (Id. at ¶ 26.)  In a letter denying Mr. Byrne's I-485 application, USCIS explained in part:

> You will have an opportunity to renew your application for adjustment of status and/or to request any other relief that may be available in removal proceedings before an Immigration Judge.  See Title 8, Code of Federal Regulations (8 CFR), section 245.2(a)(5)(II).
>
> ***
>
> You may not appeal this decision.  However, if you believe that the denial of your Form I-485 is in error, you may file a motion to reopen or a motion to reconsider using Form I-290B, Notice of Appeal or Motion.  You must submit Form I-290B within 30 calendar days of service of this decision (33 days if the decision was mailed).  If USCIS does not receive the motion to reopen or reconsider within the required period, this decision will become final.  See Title 8, Code of Federal Regulations (8 CFR), sections 103.5 and 103.8(b).

(Doc. No. 1-5 at 251.)[5]  In a separate letter denying Mr. Byrne's I-601 waiver request, USCIS stated in part:

> You may, if you wish, appeal this decision with the **Administrative Appeal Unit (AAU)**[6] **in Washington, D.C.**  You must submit such appeal also to this office.  If you do not properly file an appeal within 30 days (33 days, if this decision is mailed), this decision is final.

(Id. at 258) (original emphasis).[7]  On October 9, 2013, USCIS also denied Mr. Byrne's request to renew his employment authorization.  (Doc. No. 1 at ¶ 29.)

---

[5] USCIS concedes that this letter contained misinformation.  According to USCIS, "Byrne did not have a right to appeal the denial of his adjustment application . . . , though the denial mistakenly indicated otherwise."  (Doc. No. 6 at 3.)

[6] While USCIS referred to the Administrative Appeal Unit ("AAU") in its letter, USCIS refers to the Administrative Appeals Office ("AAO").  It appears that AAO is the proper term, so the Court will use that designation throughout its Opinion.

[7] This information was correct.  According to USCIS, "Byrne did have the right to appeal the

In denying both Mr. Byrne's application for permanent residency and his waiver of inadmissibility, USCIS determined that Mr. Byrne is ineligible for lawful permanent residency under 8 U.S.C. § 1182(a)(2)(A)(i)(II), because while still residing in Ireland, he twice violated Irish law by possessing small amounts of marijuana. (Id. at ¶ 27.) In both instances, Mr. Byrne was not represented by counsel and admitted that the marijuana was for personal use. He was required to pay a fine and did not serve any jail time.

On September 9, 2013, after Mr. Byrne's applications were denied, his counsel requested that removal proceedings[8] be held before an immigration judge, pursuant to the Immigration and Nationality Act ("INA") § 240. 8 U.S.C. § 1229a. On October 18, 2013, USCIS responded, explaining it did not have the discretion to provide for a standard INA §240 removal proceeding before an immigration judge because Mr. Byrne entered the United States under the VWP.[9] (Id.; Doc. No. 1-5 at 261.) To date, no removal proceedings have been brought against Mr. Byrne.

On November 29, 2013, the Byrnes filed the present action against USCIS. (Doc. No. 1.) In Count I of the Complaint, Plaintiffs contend that USCIS violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A)-(B), because the denials of Mr. Byrne's applications are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and are "contrary to constitutional right, power, privilege, or immunity." (Doc. No. 1 at ¶ 44.) In Count II, Plaintiffs allege that USCIS' refusal to provide for further review of the denied applications

---

denial of his I-601 waiver application to the AAO), but he did not appeal." (Doc. No. 6 at 3) (internal citation omitted).

[8] In general, "[a]n immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a)(1). These are known as removal proceedings.

[9] When a visitor enters the United States under the VWP, he agrees to certain conditions and limitations. VWP entrants waive the right to challenge removal in immigration court except for an application for asylum. 8 U.S.C. § 1187(b).

4

violated Due Process because it denied Mr. Byrne a meaningful opportunity to challenge USCIS' decisions.  (Id. at ¶¶ 46-47.)  Finally, in Count III, Plaintiffs seek an award of attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d).

As noted above, on February 18, 2014, USCIS filed a Motion to Dismiss, or a Motion for Summary Judgment in the alternative. (Doc. No. 6.)  On March 7, 2014, Plaintiffs filed a response in opposition to the Motion which was styled as a Cross-Motion for Summary Judgment.  (Doc. No. 7.)  A hearing on the Motions was held on March 20, 2014.  Both Motions are ripe for disposition by the Court.

### III.   STANDARD OF REVIEW

As a threshold matter, the Court must determine the appropriate standard of review that applies here.  When USCIS filed its dispositive Motion, USCIS characterized it as a Motion to Dismiss, or in the alternative, a Motion for Summary Judgment. (Doc. No. 6.)  When Plaintiffs' responded in opposition, they filed their own Cross-Motion for Summary Judgment. (Doc. No. 7.)  Usually, the Court must give notice to the parties before converting a motion to dismiss into a motion for summary judgment.  In re Rockefeller Ctr. Properties, Inc. Securities Litig., 184 F.3d 280, 288-89 (3d Cir. 1999).  However, the notice need not be express to satisfy this requirement.  Id. at 288.

In Hilfirty v. Shipman, the Third Circuit found that the filing of two motions to dismiss styled in the alternative as motions for summary judgment was sufficient to put the parties on notice that summary judgment may be entered in the case.  91 F.3d 573, 578-79 (3d Cir. 1996), disapproved on other grounds by Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782 (3d Cir. 2000).  Here, USCIS styled its motion as a Motion to Dismiss or, in the alternative, as a Motion for Summary Judgment.  Plaintiffs filed their own Cross-Motion for Summary Judgment in

5

response.  The Court is satisfied that the parties are on notice that summary judgment may be entered in this case.

Here, Plaintiffs are challenging various USCIS decisions affecting Mr. Byrne's status in this country.  The APA governs a district court's review of these types of agency decisions and mandates that a district court shall overturn agency action, findings, and conclusions when they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  See also Yeboah v. U.S. Dep't of Justice, 345 F.3d 216, 221 (3d Cir. 2003).  In general, this scope of review is highly deferential to the decision-making process of the government agency.  The Third Circuit has explained:

> Under the arbitrary and capricious standard, a court's scope of review is narrow, and a court is not to substitute its judgment for that of the agency.  A reviewing court may not supply a reasoned basis for the agency's action that the agency itself has not given, but it can uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned from the record.  We reverse an agency's decision when it is not supported by substantial evidence, or the agency has made a clear error in judgment.

United States v. Reynolds, 710 F.3d 498, 509-10 (3d Cir. 2013) (internal quotations omitted).

"[S]ummary judgment is the proper mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and consistent with the APA standard of review . . . ."  Uddin v. Mayorkas, 862 F. Supp. 2d 391, 399 (E.D. Pa. 2012) (quoting Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001)).  See also Occidental Eng'g Co. v. I.N.S., 753 F.2d 766, 770 (9th Cir. 1985) ("[S]ummary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did.").  However, "the usual summary judgment standard does not apply."  Uddin, 862 F. Supp. 2d at 399-400 (quoting UPMC Mercy v. Sebelius, 793 F. Supp. 2d 62, 67 (D.D.C. 2011)).  In this situation, the administrative agency is the finder of fact, and the district court

does not need to determine whether there are disputed facts to resolve at trial.  Occidental, 753 F.2d at 770.  An agency's decision should only be reversed when the evidentiary record is "so compelling that no reasonable factfinder could fail to find" to the contrary.  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992).  Essentially, the district court judge sits as an appellate tribunal, and the entire case on review is a question of law.  Am. Bioscience, 269 F.3d at 1083.

IV.   ANALYSIS

On August 20, 2013, USCIS denied Mr. Byrne's I-485 application for permanent residency and his I-601 waiver application. (Doc. No. 1 at ¶ 26.)  The underlying facts leading up to that decision are not in dispute.  Rather, the parties disagree as to whether it was legal error for USCIS to determine that Mr. Byrne was inadmissible for permanent residency and was also ineligible for a waiver of inadmissibility.  In addition, they dispute whether Mr. Byrne's applications were entitled to further consideration by an immigration judge after USCIS denied them.  For reasons that follow, the Court will grant summary judgment in favor of USCIS.

### A. USCIS Did Not Abuse its Discretion in Determining that Mr. Byrne is Inadmissible for Permanent Residency

In denying Mr. Byrne's I-485 application, USCIS found him to be inadmissible for permanent resident status because on two separate occasions, he violated Irish law[10] by possessing marijuana for personal use.  The statute governing aliens who are ineligible for admission states as follows:

> (2) Criminal and related grounds
>    (A) Conviction of certain crimes
>        (i) In general
>            Except as provided in clause (ii), any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of—

---

[10] Plaintiff admitted to violating Section 3 of Ireland's Misuse of Drugs Act of 1997.

7

> (I) a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime, or
> (II) a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), is inadmissible.

8 U.S.C. §§ 1182(a)(2)(A)(i)(I)-(II). The USCIS determined that Mr. Byrne's two marijuana violations rendered him inadmissible under Subsection (II) of the statute, which deals with violations relating to controlled substances. (Doc. No. 1-5 at 257.)

Plaintiffs contend that Mr. Byrne's two marijuana adjudications should not render him inadmissible for permanent residency in the United States because the proceedings in Ireland were merely summary adjudications, rather than criminal convictions which the statute allegedly requires. (Doc. No. 7 at 4-6.) The INA defines "conviction" as follows:

> (48)(A) The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—
>> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
>> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

8 U.S.C. § 1101(a)(48)(A). Plaintiffs contend that this definition applies any time the word "conviction" appears in the statute, such as in the title of 8 U.S.C. § 1182(a)(2)(A): "Conviction of certain crimes." This argument is unpersuasive, given the relevant facts in this case. The Court need not look any further than the plain language of the statute which does not require that the applicant be convicted of violating a controlled substance law or regulation for it to apply. Instead, the statute states that:

> [A]ny alien convicted of, <u>or who admits having committed</u> . . . a violation of . . . any law or regulation of a . . . foreign country relating to a controlled substance…is inadmissible.

8

8 U.S.C. § 1182(a)(2)(A)(i)(II) (emphasis added).  The plain language of the statute makes it clear that an alien can be inadmissible for different reasons.  The alien may be inadmissible because he was convicted of a violation of a controlled substance law.  Alternatively, the alien may be inadmissible if he admits having committed such a violation.

When Mr. Byrne submitted his I-485 application for permanent residency and his I-601 waiver application, he admitted that he had been arrested on two separate occasions for possession of marijuana for personal use and had paid a fine after both incidents.  These facts are not disputed, and USCIS' decision to deny the applications was clearly supported by the evidence in the record.

Furthermore, USCIS did not have to make a finding that the Irish proceedings were "convictions," as defined by the statute.[11]  Instead, under the applicable statute, it was sufficient

---

[11] Even if the Court were to consider Plaintiffs' arguments regarding the meaning of the word "conviction," the outcome would remain the same.  In making these arguments, Plaintiff primarily relied on Castillo v. Attorney Gen. U.S., 729 F.3d 296 (3d Cir. 2013), a case in which the Third Circuit considered the meaning of the terms "conviction" and "crime" after the Board of Immigration Appeals ("BIA") concluded that Peruvian citizen, Bernardo Castillo, had been "convicted of a crime" within the meaning of the removal provision, 8 U.S.C. § 1227.  There are three reasons why Plaintiff's reliance on Castillo is misplaced.

First, the Court in Castillo was dealing with 8 U.S.C. § 1227, the statute governing aliens who are removable from the United States.  While this statute is similar to the one governing inadmissibility (at issue here), there are noticeable differences between them.  Importantly, as noted above, the inadmissibility statute makes clear that an alien may be found to be inadmissible for permanent resident status if he admits having committed a violation of a law or regulation relating to controlled substances.  8 U.S.C. § 1182(a)(2)(A)(i)(II).  The parallel removal provision is only concerned with convictions, rather than an alien's admission that he committed a controlled substance violation.  See 8 U.S.C. § 1227(a)(2)(B)(i) ("Any alien who at any time after admission has been convicted of a violation of . . . any law or regulation of a . . . foreign country relating to a controlled substance . . . is deportable.").  Given this difference in the statutes, the Third Circuit's analysis relating to 8 U.S.C. § 1227 is not directly applicable here, where 8 U.S.C. § 1182 is at issue.

Second, in Castillo, the BIA had previously determined that the plaintiff had been "convicted

that Mr. Byrne admitted to committing these two violations in Ireland. Because the agency's finding of inadmissibility was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, the Court will not overturn its decision.[12]

---

of a crime involving moral turpitude" and was therefore removable under 8 U.S.C. §1227(a)(2)(A)(i). Here, on the other hand, USCIS denied Mr. Byrne's applications due to violations of laws or regulations relating to controlled substances. In Castillo, the Third Circuit noted the distinction between "crimes" and "violations":

> [T]he INA itself evidently distinguishes crimes from non-criminal violations, providing, for example, that an alien is inadmissible if he or she is convicted of "a crime involving moral turpitude," 8 U.S.C. § 1182(a)(2)(A)(i)(I), or of a "violation . . . relating to a controlled substance," id. § 1182(a)(2)(A)(i)(II).

729 F.3d at 302 n.1. Unlike the Third Circuit in Castillo, this Court is dealing with a "violation," as opposed to a "crime."

Third, in reaching its decision in Castillo, the Court of Appeals primarily relied on a BIA decision, In Re Eslamizar, 23 I. & N. Dec. 684 (BIA 2004) (en banc). 729 F.3d at 311. In that opinion, the BIA explained:

> [N]othing in our decision should be taken as asserting that a foreign conviction must adhere to all the requirements of the United States Constitution applicable to criminal trials, including that relating to the requisite standard of proof. Rather, we find that Congress intended that the proceeding must, at a minimum, be criminal in nature under the governing laws of the prosecuting jurisdiction, whether that may be in this country or in a foreign one.

In Re Eslamizar, 23 I. & N. Dec. at 688. Following this reasoning, cited by the Third Circuit, it would not necessarily matter that Mr. Byrne's Irish proceedings did not adhere to all the constitutional requirements that apply to criminal trials in the United States. Moreover, Plaintiffs attached to the Complaint letters from an Irish attorney, Patrick O'Riordan, who repeatedly referred to the two marijuana adjudications as "convictions." (See Doc. No. 1-5 at 225-28.) While Mr. O'Riordan's characterization of the proceedings is not controlling, it is worth noting that he wrote: "The previous offences are undoubtedly convictions." (Id. at 227.)

For these three reasons, the Court would not be persuaded by Plaintiffs' arguments that Mr. Byrne's two prior marijuana adjudications are not actually "convictions" for purposes of the immigration statute.

[12] Plaintiffs also argue that certain canons of statutory construction should apply in this case. Specifically, they contend that USCIS failed to consider the rule of lenity and the requirement

### B. USCIS Did Not Abuse its Discretion in Determining that Mr. Byrne is Not Entitled to a Waiver of Inadmissibility

Plaintiffs also contend that USCIS committed legal error in refusing to grant Mr. Byrne a waiver of inadmissibility. USCIS has been delegated with authority to waive inadmissibility findings in certain situations. The relevant statute provides in part:

> The Attorney General may, in his discretion, waive the application of subparagraphs (A)(i)(I), (B), (D), and (E) of subsection (a)(2) of this section and subparagraph (A)(i)(II) of such subsection insofar as it relates to <u>a single offense of simple possession of 30 grams or less of marijuana</u> . . .

---

of proportionality when determining that Mr. Byrne is both inadmissible for adjustment of status and ineligible for a waiver of inadmissibility. (Doc. No. 7 at 8-12.) The rule of lenity is a doctrine requiring that an ambiguity in a criminal law or a statute imposing a penalty should be resolved in favor of the defendant. "Naturally, the rule of lenity has no application when the statute is clear—though just as naturally counsel will try to manufacture ambiguity when there is none." Antonin Scalia & Bryan A. Garner, <u>Reading Law: The Interpretation of Legal Texts</u> 301 (2012). The rule of lenity also may apply when an immigration statute is ambiguous. <u>See</u> <u>I.N.S. v. Cardoza-Fonseca</u>, 480 U.S. 421, 449 (1987) (referring to "the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien") (citations omitted). As discussed throughout this Court's Opinion, the statutes at issue in this case are unambiguous. Thus, the rule of lenity does not apply here.

Plaintiffs' arguments about proportionality are similarly unavailing. According to the Supreme Court:

> The concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the "precept of justice that punishment for crime should be graduated and proportioned to [the] offense." <u>Weems v. United States</u>, 217 U.S. 349, 367, 30 S. Ct. 544, 54 L. Ed. 793 (1910).

<u>Graham v. Florida</u>, 560 U.S. 48, 59 (2010). The Supreme Court has also "long recognized that deportation [as a consequence of a criminal conviction] is a particularly severe 'penalty' . . . ." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 365 (2010) (quoting <u>Fong Yue Ting v. United States</u>, 149 U.S. 698, 740 (1893)).

However, Plaintiffs' focus on the proportionality requirement is misplaced. First and foremost, removal proceedings have not been brought against Mr. Byrne, so there is currently no threat of deportation for the Court to consider. Second, Mr. Byrne has already been penalized by the Irish court system for his two possession violations. He paid a fine in both instances. USCIS' determination that he is inadmissible to adjust his status, and any potential removal action against him, is not punishment for either violation.

11

8 U.S.C. § 1182(h) (emphasis added).  Because Mr. Byrne had previously been charged with two separate offenses of simple possession of marijuana, USCIS determined that he was ineligible for the I-601 waiver.  (Doc. No. 1-5 at 257.)  Plaintiffs contend that USCIS misapplied the statute.[13]  The Court does not agree.  The plain language of the statute makes clear that a waiver of inadmissibility is only available for a single offense of simple possession of marijuana.

The Fifth Circuit confronted a similar issue in Rana v. Holder, 654 F.3d 547 (5th Cir. 2011), and Rana is instructive here.  In that case, Rana, a Pakistani citizen, was found to be inadmissible because he pled guilty to unlawful possession of less than two ounces of marijuana. Id. at 548.  The Attorney General granted him a waiver, however, because it was only a single offense for possession of less than 30 grams of marijuana.  Id.  The waiver permitted Rana to become a permanent resident.  Id.

Rana later pled guilty to a second charge for possession of less than two ounces of marijuana.  Id.  He served a sentence and subsequently travelled outside the country.  Id.  Upon his return to the United States, Rana was deemed inadmissible because of the second marijuana conviction.  Id.  An immigration judge ordered that he be removed to Pakistan.  Id.  On appeal, the Board of Immigration Appeals ("BIA") affirmed the removal order, holding that Rana was ineligible for a waiver because he had twice been convicted for marijuana possession, and the statute only permits waiver for a single offense.  Id. at 549.  In denying Rana's petition for review, the Fifth Circuit reasoned:

---

[13] In a letter denying Mr. Byrne's I-601 waiver request, USCIS advised him of his right to appeal their decision. (Doc. No. 1-5 at 258.) Mr. Byrne did not file an appeal, and USCIS contends that because he failed to exhaust his present arguments in front of the AAO, Mr. Byrne should not be permitted to raise them here. The parties have not briefed this exhaustion issue, and the Court will not consider it here.

> Rana contends that, because the Attorney General issued a waiver relating to his 2003 marihuana[14] possession conviction, any new waiver would only "relate[ ] to a single offense of simple possession," namely his 2005 conviction. But even assuming arguendo that Rana is correct that any new waiver would only relate to a single simple possession offense, § 1182(h) does not say that each waiver of "the application of" [§ 1182(a)(2)(A)(i)(II) ] must relate to "a single offense." Rather, § 1182(h) states that the Attorney General may waive the application of § 1182(a)(2)(A)(i)(II) insofar as it relates to a single offense.
>
> ***
>
> Rana's interpretation of § 1182(h) requires a tortured rendering of the word "single." Instead of reading the term "single offense" to allow a waiver of one offense of simple possession of 30 grams or less of marihuana, as is most natural, Rana interprets it to allow a potentially infinite number of waivers of a potentially infinite number of offenses, *but only as long as the waivers were granted for one offense at a time*. . . . It is much more likely that when Congress indicated that waivers must be limited to "a single offense of simple possession of 30 grams or less of marihuana," it meant the total number of offenses, not the number sought to be waived each time an alien asks.

Id. at 550 (alterations and emphasis in original).

Similarly, in Steele v. Blackman, the Third Circuit explained:

> Relief under section 1182(h) is also foreclosed in Steele's case. Under 8 U.S.C. § 1182(h) the Attorney General may waive the inadmissibility under 8 U.S.C. § 1182(a)(2)(A)(i)(II) of an alien convicted of a controlled substance offense if that alien's inadmissibility relates to a single offense of simple possession of 30 grams or less of marijuana. Here, Steele has admitted to committing more than one offense for which he could be found inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(II). Thus, a waiver under section 1182(h) is unavailable.

236 F.3d 130, 134 (3d Cir. 2001). The plain language of the statute dictates the same result in this case.[15] Once Mr. Byrne had two marijuana violations, he became ineligible for the waiver of inadmissibility.

---

[14] The Fifth Circuit used this alternate spelling of "marijuana" throughout its Opinion.

[15] Other federal courts have read the statute this way. See, e.g., Tyson v. Jeffers, 115 F. App'x 34, 45 (10th Cir. 2004) ("Tyson had at least five controlled substance convictions on his record, two of which involved the sale or attempted sale of controlled substances. . . . Tyson was clearly ineligible for discretionary relief under former § 212(h)."); Hernandez-Osoria v. Ashcroft, No. 01-5545, 2002 WL 193574, *4 (S.D.N.Y. Feb. 7, 2002) ("Hernandez-Osoria has two offenses, not a single offense, and neither conviction is for simple possession of

Plaintiffs contend, however, that USCIS erred in considering both of Mr. Byrne's marijuana violations together because § 1182(a)(2)(A)(i)(II) only refers to a "violation," rather than multiple violations. According to Plaintiffs, "[e]ach application of the statute . . . is for a single offense of simple possession of less than 30 grams, thus each application can be waived under INA § 1182(h)." (Doc. No. 7 at 7.)

Plaintiffs' interpretation of § 1182(h) involves a "tortured rendering" of the statute. Specifically, Plaintiffs contend that because an alien is inadmissible for having committed "a violation" of a law regulating controlled substances, USCIS had to apply the statute to each marijuana violation by Mr. Byrne individually, rather than decide that both violations rendered him inadmissible. Like Rana's interpretation of § 1182(h), Plaintiffs' approach would allow a potentially infinite number of waivers of a potentially infinite number of simple possession offenses. Under this theory, USCIS would determine inadmissibility based on each violation by itself. Then, USCIS could apply an individual waiver to each single offense involving possession of 30 grams or less of marijuana.

The Court agrees with the Fifth Circuit that "[i]t is much more likely that when Congress indicated that waivers must be limited to 'a single offense of simple possession of 30 grams or less of marihuana,' it meant the total number of offenses . . . ." Rana, 654 F.3d at 550. The Court need not go beyond the plain language of the statute which unambiguously limits waivers to a single offense. Unfortunately for Mr. Byrne, he has admitted to possessing marijuana for personal use in two separate adjudications, and "that is one offense too many under the statute." Id. Because the USCIS did not abuse its discretion in finding Mr. Byrne ineligible for a waiver of inadmissibility, the Court will not overturn its decision.

---

marijuana. Consequently, Hernandez-Osoria is not eligible to obtain a waiver of inadmissibility under section 212(h).")

### C. USCIS Did Not Violate Mr. Byrne's Due Process Rights or Abuse its Discretion When It Denied Mr. Byrne's Requests to be Placed in Removal Proceedings

After USCIS denied Mr. Byrne's application to adjust his status to permanent resident and denied his waiver application, Mr. Byrne requested that USCIS place him into removal proceedings so that he could renew his I-485 application in front of an immigration judge. USCIS denied this request because Mr. Byrne is a VWP entrant who waived his right to contest removal.[16] Plaintiffs contend that USCIS violated Mr. Byrne's right to procedural due process in failing to give him a meaningful opportunity to challenge both the denial of his I-485 application and the denial of his request to renew his temporary employment authorization.[17] Plaintiffs also contend that USCIS abused its discretion when it declined to place Mr. Byrne into removal proceedings. For reasons that follow, the Court does not agree.

When foreign visitors like Mr. Byrne enter the United States under the VWP, they sign a waiver[18] of certain specified rights, including their rights to procedural due process. See Bradley

---

[16] Unfortunately, when USCIS denied Mr. Byrne's I-485 application for permanent resident status, the agency mistakenly informed him that he would "have an opportunity to renew [his] application for adjustment of status and/or to request any other relief that may be available in removal proceedings before an Immigration Judge." (Doc. No. 1-5 at 251.) USCIS acknowledges that this information was given in error. (Doc. No. 6 at 10 n.3.)

[17] In denying Mr. Byrne's request to renew his temporary employment authorization, USCIS advised him:

> You may, if you wish, appeal this decision with the **Administrative Appeal Unit (AAU) in Washington, D.C.** You must submit such appeal also to this office. If you do not properly file an appeal within 30 days (33 days, if this decision is mailed), this decision is final.

(Doc. No. 1-5 at 258) (original emphasis). Mr. Byrne was given an opportunity to challenge the denial of his request to renew his temporary employment authorization, but he never filed an appeal. Therefore, his contention that he was deprived of due process is meritless.

[18] The waiver that a VWP entrant signs in order to enter the country under this program is different from the waiver that USCIS may grant to waive an alien's inadmissibility.

v. Attorney Gen. of U.S., 603 F.3d 235, 239, 241 (3d Cir. 2010) (characterizing the VWP waiver as "an express due process waiver"). For instance, in exchange for being permitted to enter the country for ninety days without a visa, a VWP entrant waives the following rights:

> (1) to review or appeal under this chapter of an immigration officer's determination as to the admissibility of the alien at the port of entry into the United States, or
>
> (2) to contest, other than on the basis of an application for asylum, any action for removal of the alien.

8 U.S.C. §§ 1187(b)(1)-(2). Thus, a VWP entrant waives his right to challenge the Government's admissibility determinations[19] and removal actions, other than on the basis of asylum. Bradley, 603 F.3d at 238. The Third Circuit has explained the purpose behind the waiver:

> Given the ease and convenience with which a VWP visitor may enter the United States, the VWP's "linchpin . . . is the waiver, which assures that a person who comes here with a VWP visa will leave on time and will not raise a host of legal and factual claims to impede his removal if he overstays."

Id. 238-39 (3d Cir. 2010) (quoting Handa v. Clark, 401 F.3d 1129, 1135 (9th Cir. 2005)).

Usually, the issue of an alien's removability is adjudicated in front of an immigration judge. "[T]he whole purpose of having proceedings before an [immigration judge] is to have that officer preside over" a removal dispute. Handa, 401 F.3d at 1134. It therefore follows that a VWP entrant who has waived his right to contest removal is not entitled to present his arguments to an immigration judge in removal proceedings. Mr. Byrne entered the United States under the

---

[19] The statute expressly applies to an immigration officer's determination as to the admissibility of an alien at the port of entry into the United States. 8 U.S.C. §§ 1187(b)(1). However, a USCIS Policy Memorandum explains that like someone actually admitted under the VWP at a port of entry, "a refused [adjustment of status] applicant is not entitled to appeal or review of the refusal of admission." U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security, Adjudication of Adjustment of Status Applications for Individuals Admitted to the United States Under the Visa Waiver Program (PM-602-0093), 3 (Nov. 14, 2013), http://www.uscis.gov/sites/default/files/files/nativedocuments/2013 1114_AOS_VWP_Entrants_PM_Effective.pdf (hereinafter "USCIS, PM-602-0093").

VWP and signed an "express due process waiver." See Bradley, 603 F.3d at 241. Because the entire purpose of appearing before an immigration judge is to dispute removal, which Mr. Byrne has waived his right to do, his due process argument is unavailing. He cannot assert rights that he expressly waived.

Plaintiffs also contend that USCIS' refusal to place Mr. Byrne into removal proceedings was an abuse of discretion. According to Plaintiffs, the VWP rules relating to removal are not mandatory and USCIS therefore has discretion to place VWP aliens into removal proceedings. They contend that "the failure to acknowledge the existence of such discretion is an effective abuse of that discretion." (Doc. No. 7 at 15.) The Court disagrees that USCIS had discretion to place Mr. Byrne into removal proceedings before an immigration judge.

In support of their position, Plaintiffs rely solely on United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954). In that case, the Supreme Court objected to the BIA's purported failure to exercise its own discretion in considering Joseph Accardi's appeal and simply deferred to the Attorney General's opinion that Accardi was an unsavory character who should be deported. Id. at 267, 268. Rather than characterize the BIA's failure to exercise its discretion as an abuse of discretion, the Supreme Court held that the BIA's actions were contrary to the existing governing regulations. Id. at 268. This case gave rise to what has become known as the "Accardi doctrine." Under this doctrine, "rules promulgated by a federal agency that regulate the rights and interests of others are controlling upon the agency." Leslie v. Attorney Gen. of U.S., 611 F.3d 171, 175 (3d Cir. 2010).

Here, pursuant to the Accardi doctrine, the rules promulgated by the Department of Homeland Security are controlling upon USCIS. One regulation makes clear that an immigration officer's determination that a VWP entrant is inadmissible under § 1182 "shall be

effected without referral of the alien to an immigration judge for further inquiry, examination, or hearing . . . ." 8 C.F.R. § 217.4(a)(1) (emphasis added).  The mandatory language of the statute indicates that USCIS officers do not have discretion to place VWP aliens like Mr. Byrne into removal proceedings after determining they are inadmissible under § 1182.  Similar mandatory language appears in a USCIS internal policy memorandum[20] which instructs that "[a] VWP overstay whose case is denied by USCIS has no appeal rights and <u>may not</u> be placed in removal proceedings before an immigration judge."  USCIS, PM-602-0093 at 4 (emphasis added).  Furthermore, placing a VWP alien into removal proceedings would run counter to the VWP itself, as the waiver is meant to assure that a VWP entrant "will not raise a host of legal and factual claims to impede his removal . . . ." <u>Bradley</u>, 603 F.3d at 238-39 (quotation omitted).  As noted, VWP entrants expressly waive their rights to contest removal when they enter the United States under this program.  <u>See</u> 8 U.S.C. §§ 1187(b)(2).  For these reasons, the Court disagrees with Plaintiffs' assertion that USCIS has discretion to place Mr. Byrne in removal proceedings in front of an immigration judge and abused its discretion in declining to do so.[21]

## V.   CONCLUSION

For the aforementioned reasons, the Court will grant USCIS' Motion for Summary Judgment and will deny Plaintiffs' Cross-Motion for Summary Judgment.  An appropriate Order follows.

---

[20] The policy memorandum explains that it "applies to, and is binding on, all U.S. Citizenship and Immigration Services (USCIS) employees, unless specifically exempt." USCIS, PM-602 0093 at 1.

[21] It is also worth noting that when Plaintiffs' counsel requested that Mr. Byrne be placed in removal proceedings under INA Section 240 (alternatively 8 U.S.C. § 1229(a)), a USCIS Section Chief asked him to provide the legal basis for doing so.  Plaintiffs' counsel replied that he "[knew] of no specific legal authority" for doing so.  (Doc. No. 1-5 at 262.)